REPORTED

IN THE COURT OF SPECIAL APPEALS
OF MARYLAND

No. 1836

September Term, 2012

_____

WILLIAM WESTRAY

v.

STATE of MARYLAND

_____

Krauser, C. J.,
Berger,
Kenney, James A., III
        (Retired, Specially Assigned),

JJ.

_____

Opinion by: Kenney, J.

_____

Filed: June 25, 2014

A jury sitting in the Circuit Court for Montgomery County convicted William Westray, appellant, on nine counts of first degree burglary, ten counts of theft, and two counts of attempted first degree burglary. The trial court imposed an aggregate sentence of sixty years' incarceration.

He presents three contentions in his brief, which we have rephrased as follows:[1]

> 1. Did the circuit court discharge counsel in compliance with Md. Rule 4-215?
>
> 2. Did the circuit court err or abuse its discretion by denying appellant's request for the appointment of *pro bono* counsel?
>
> 3. Has review of the search warrant been preserved for appellate review?

As we shall explain, we answer the first question "no." We address the second question in the event of a retrial. The third question is not preserved for our review.

## FACTUAL AND PROCEDURAL HISTORY[2]

---

[1] In his opening brief, Westray presents the following arguments:

I. The lower court erred in failing to determine and announce on the record that Mr. Westray knowingly and voluntarily waived his right to counsel.

II. The lower court abused its discretion in denying Mr. Westray's request for the appointment of pro bono counsel.

III. The lower court erred in receiving evidence which was seized pursuant to a warrant based on incorrect factual representations.

[2] Because the sufficiency of the State's evidence is not at issue, we set forth only the
(continued...)

On May 15, 2012, Westray appeared before the circuit court for a hearing to address assigned counsel's concern that "he's had difficulty speaking with [Westray]." Reminding Westray that an August trial date had been scheduled, the court cautioned Westray and indicated that it "want[ed] to make sure that [Westray was] well represented."

Westray quickly voiced his dissatisfaction with assigned counsel[3]:

> MR. WESTRAY: I mean this man is an idiot, sir. Straight, straight, straight down, he's an idiot. . . . I'm saying it now. You might as well going to kill me. I'm not going into a courtroom with this man.
>
> THE COURT: Have you had the opportunity to meet with [assigned counsel]?
>
> MR. WESTRAY: He don't do nothing I ask him to do. So what, I mean what, what do I need a lawyer if he here for me, not for himself. Okay?
>
> * * *
>
> THE COURT: Are you telling me that you have met with him before?
>
> MR. WESTRAY: Yeah. This man, this man, this man don't listen to nothing I tell him. I mean he's an idiot. Look at him. He's an idiot.

-----

(...continued)

facts pertaining to the issues before us. *See Hill v. State*, 418 Md. 62, 66 (2011); *Cure v. State*, 195 Md. App. 557, 561 (2010) (only brief summary necessary), *aff'd on other grounds*, 421 Md. 300 (2011). *See generally Whitney v. State*, 158 Md. App. 519, 524 (2004); *Craig v. State*, 148 Md. App. 670, 674 n. 1 (2002); *Pearlstein v. State*, 76 Md. App. 507, 520 (1989) (unnecessary to recapitulate all evidence presented at trial).

[3]The trial court determined that Westray's reasons for discharging counsel lacked merit. This determination is not challenged.

2

THE COURT:   Now –

MR. WESTRAY:   Seriously.

THE COURT:   – you've met, Mr. Westray, you've met –

MR. WESTRAY:   Let's go over – I'm going to tell you this. I'm not coming –

THE COURT:   Just listen.

MR. WESTRAY:   – to court with this man, okay?

THE COURT:   Have you met with –

MR. WESTRAY:   I will represent myself and I would die first before I, before I, before I, before I come to court with this man, okay?

Westray continued until the circuit court turned to assigned counsel for an explanation:

> THE COURT:  All right. [Assigned counsel], do you want to be heard on this?
>
> [ASSIGNED COUNSEL]:   Yes, Your Honor.  I was assigned to represent Mr. Westray.  I went out and met him on different occasions.  We had a meeting on February 22nd of this year and I was able to get some biographical information from him.
>
> I met him on the 28th of February and I got, I got nowhere.  He wouldn't engage with me.  *I had, I had some doubts as to whether he was competent or not.*[4]  *I called some*

_____

[4]Assigned counsel in a later appearance stated to the court:

> [ASSIGNED COUNSEL]:  I would tell the Court that I have no doubt from continuing to meet with him and talk to him that I

(continued...)

3

*family members. I never really got a clear answer about that.*

At some point he indicated to me that maybe he was going to try to retain counsel, that maybe family members had the ability to do that. I spoke to his uncle who indicated that Mr. Westray had inherited some money some period of time ago, but his uncle didn't believe any of that money was still available and that there were no funds in the family for him to retain private counsel.

I've tried to meet with him since. I think I tried to go meet with him two weeks ago and he refused to meet with me at all.

THE COURT: Has he ever asked you to do something that you haven't done to your knowledge?

[ASSIGNED COUNSEL]: Not, not to my knowledge. I've called family members and I've received discovery in the case. I haven't even had a chance to start to discuss it with him and show him what the different pieces of evidence against him are. He's indicted in about a dozen first-degree, you know, residential burglaries here in Montgomery County.

(Emphasis added).

---

(...continued)

think Mr. Westray is competent today. He understands the nature of the proceedings against him. He understands the role of the court, the prosecutor, defense counsel, all of those kind of things.

Assigned counsel's statement as to a defendant's competency would not relieve the trial court of the need to make its own determination in regard to a defendant's knowledge and understanding in considering the waiver of counsel. *Cf. Godinez v. Moran*, 509 U.S. 389, 402 (1993) (stating that when defendant seeks to waive right to counsel, "determination that he is competent to stand trial is not enough; the waiver must also be intelligent and voluntary before it can be accepted").

4

Counsel's concerns about the failure to engage with Westray prompted him to request the presence of the District Public Defender for Montgomery County:

> [ASSIGNED COUNSEL]: . . . I just wanted to let him know that it sounded to me like he, he kept telling me, "You're fired, I don't want you to represent me," and I'll go, "Okay, that's fine." It's very clear that's the message I was getting and I was not going to be able to engage him on this matter.
>
> For Mr. Westray's benefit, I asked Brian Shefferman to be here. He's the District Public Defender for Montgomery County. And I'd actually ask Mr. Shefferman to come forward and explain to Mr. Westray how the Public Defender treats requests to discharge counsel at this time.

Mr. Shefferman addressed the court and explained that the Public Defender's Office "just can't assign any lawyer of [a defendant's] choosing." He added:

> If for some reason, although technically you have the right to represent yourself, Mr. Westray, if you were to say you don't want [assigned counsel], it would be our policy that we're not going to assign you a different lawyer. . . .

Westray responded that he "could find" a private counsel and that he would "get money and find one."

The circuit court then reviewed the charges and warned Westray that the charges exposed him to substantial penalties.[5] He further advised:

> So an attorney can be of assistance to you at trial. I mean even if you are guilty of any of these offenses, an attorney can help in the event you're convicted to explain to the Judge why you should get a lesser sentence. So it's very important,

---

[5] The record shows that the District Court complied with Md. Rule 4-215(a)(1)-(3).

5

obviously, that you have an attorney.

Now you already know, because you have been represented by the Public Defender, that you may be entitled to representation by the Public Defender. But as has been pointed out to you by Mr. Shefferman, if you are dissatisfied with [assigned counsel], it is their policy, meaning the Public Defender's policy, that you can't be represented by another member of the office.

In other words, you don't have the right to choose which Public Defender is going to represent you.

You also have the right to be represented by a private attorney which you've indicated to me you're going to try to do. So it's very important that you attend to that as quickly as possible, because if you come back here in 30 days when we have the new hearing and you tell me, "Judge, I don't have a, I can't afford a private attorney," then you're going to have to make that decision which it sounds like you've already made, that you don't want to have [assigned counsel] represent you and you're going to represent yourself, which I wouldn't recommend because you're not a trained lawyer.

Now I'm not suggesting you should discharge [assigned counsel], but I think it would be a good idea for you to at least think about this over the next 30 days. If you get the public, if you get the private attorney, that's fine. We can deal with that. But if not, in 30 days you're going to have to tell me, Judge, I want to fire [assigned counsel] or I want to keep him and I'll respect whatever that decision is.

But that's the time in which we've got to figure out what to do here because I don't want you to be trying this case by yourself. You're not a trained attorney. All right? Do you have any questions you want to ask of me at this time?

Westray appeared before the circuit court on June 8 and reiterated his wish to discharge assigned counsel. The circuit court warned him that "firing the Public Defender's

6

Office[,]" would mean "defending yourself or you're seeking to retain private counsel." The court indicated that self-representation was ill-advised, and that his reasons for discharging counsel were without merit, but granted Westray's wish to discharge counsel. The court then cautioned Westray as follows:

> THE COURT: Okay. So what I'm going to do is I'm going to confirm with you this trial date which is now August 21st and according to the State's Attorney it's going to take about three days to try this case because I guess there's a number of allegations. So I certainly still encourage you to get counsel.
>
> If you get counsel and there's a genuine reason why that counsel can't be present and needs a postponement, I would certainly consider that at that time, but for now since you've indicated to me that you don't want counsel, we're going to keep that court date as it is –
>
> MR. WESTRAY: Okay. No problem.

Before the trial on August 21, the court took up Westray's previously filed motion for the appointment of *pro bono* counsel. The following transpired:

> Your final motion, really two motions, Mr. Westray, are a motion for postponement, which is sort of coupled for a motion for pro bono screening. Now before I hear you in argument, I want to remind you of a couple of things. You were back before me in May because [assigned counsel] was concerned that he was going to be fired and wanted a hearing so I could determine what the status was regarding your counsel.
>
> And I at that time advised you of your right to counsel because you hadn't previously been advised since you were represented by counsel. And I explained to you that an attorney could be of assistance to you during the trial. Even if you were found guilty, an attorney would be helpful in explaining to a judge that a lesser sentence might be appropriate in your case.

7

But we set another hearing on June 8th because I actually had tried to dissuade you in May from firing [assigned counsel].

At the June 8th hearing, I informed you that I would let you discharge [assigned counsel]; however, that you needed to understand that under the law of this state, when you fire your Public Defender, you don't get the choice of another free attorney.

And I didn't find any merit in your reason for firing [assigned counsel]. I think he's a fine attorney. I know you didn't like him and I appreciate that, but you assured me at that time that you wanted to go ahead and represent yourself. And I told you that if you obtained new counsel and that new counsel had a trial conflict, I would be glad to consider postponing the matter.

So now here in early August you now say, "Well, I want, I want you to appoint a pro bono attorney for me." I don't know that I have any power to do that. The only provision that I'm aware of in a criminal case for representation of the indigent, at least through a state agency, is the Public Defender. And as I said, you're not allowed to pick and choose Public Defenders. So do you still want me to postpone this case?

After Westray responded in the affirmative to the court's question regarding a postponement, the court denied Westray's motion for continuance:

The point is now that you're really, since you let the Public Defender go, you really sort of have the choice of representing yourself or hiring a private attorney, which I understand you're not able to do. And you did assure me that you wanted to represent yourself. So here we are.

MR. WESTRAY: So be it, man. I represent myself, I don't need, I don't need it, brother.

**DISCUSSION**

8

## I. Discharge of counsel

Westray asserts that the circuit court erred by failing to determine and announce on the record that he "knowingly and voluntarily" waived his right to counsel in accordance with Md. Rule 4-215(b). The State responds that "Rule 4-215 does not require such an announcement when a defendant seeks to discharge an attorney whose appearance has been entered." According to the State, the announcement of a "knowing and voluntary" waiver requirement is invoked where "a defendant who is not represented by counsel indicates a desire to waive counsel."

The State further maintains that the circuit court did comply with Rule 4-215(b), as mandated by Rule 4-215(a)(4), by conducting a "waiver inquiry," and points out that the "record shows that there was 'an examination of the defendant on the record conducted by the court, the State's Attorney, or both.'" More specifically, the State asserts:

> Rule 4-215(b) explicitly refers to a situation where "a defendant who is not represented by counsel indicates a desire to waive counsel." However, at the June 8, 2012, hearing [appellant's desire to waive counsel] is the focus of his claim, Westray was represented by counsel. So the language of Rule 4-215(b), by itself, does not apply to Westray's situation.

> Westray is correct that Rule 4-215(e) requires compliance with "subsections (a) (1)-(4) of this Rule" and one of those subsections requires the circuit court to "[c]onduct a waiver inquiry pursuant to section (b) of this Rule if the defendant indicates a desire to waive counsel." However, the "waiver inquiry" requirement of Rule 4-215(b) is analytically and chronologically distinct from the "determine and announce" requirement. In other words, Rule 4-215(b) requires the trial court to: (1) make an inquiry - that is, ask certain questions, or make sure those questions are asked ("an examination of the defendant on the record conducted by the court, the State's Attorney, or both"); and (2) make an explicit decision ("after" the examination, "determines and

9

announces on the record that the defendant is knowingly and voluntarily waiving the right to counsel").

That the "inquiry" is separate and distinct from the decision is confirmed by the plain meaning of the rule and case law construing the rule. An "inquiry" involves asking questions, not making a decision. *See* American Heritage College Dictionary 716 (4th ed. 2007) (defining "inquire" as "[t]o seek information by asking a question"). Moreover, the rule indicates that the determination and announcement is to occur "after" the inquiry – that is, the "examination," indicating that they are chronologically and conceptually distinct. In addition, this Court's case law has treated the "inquiry" as a "step" that is distinct from the decision made after that inquiry:

> Synthesizing the case law mentioned above, a lower court should engage in a simple three-step process when determining whether the reasons presented by a defendant who wishes to discharge his attorney are meritorious. **The court should first ask the defendant why he wishes to discharge counsel**, give careful consideration to the defendant's explanation, and **then rule whether the explanation offered is meritorious**.
>
> *Hawkins v. State*, 130 Md. App. 679, 687 (2000) (emphasis added).

### *Standard of Review*

Our review of the circuit court's compliance with Rule 4-215 is *de novo*. *See Gutloff v. State*, 207 Md. App. 176, 180 (2012). "'The provisions of the rule are mandatory' and a trial court's departure from them constitutes reversible error." *State v. Hardy*, 415 Md. 612, 621 (2010) (quoting *Williams v. State*, 321 Md. 266, 272 (1990)).

### *Preservation*

Generally, for an appellate court to review an issue on appeal, the issue must have been raised and decided by the trial court. *See* Md. Rule 8-131(a). "In other words, if a party

10

fails to raise a particular issue in the trial court, or fails to make a contemporaneous objection, the general rule is that he or she waives that issue on appeal." *Nalls v. State*, 437 Md. 674, __ (slip op. p. 13) (2014) (internal citations omitted). Here, there was no contemporaneous objection made and the State has not raised the issue of preservation.

This is not a case where the defendant was represented by counsel and the record reflects a court inquiry that might inform a decision as to whether the defendant's decision to waive a jury trial was made knowingly and voluntarily. Not only had appellant discharged his lawyer, the record does not suggest a meaningful inquiry as to whether his decision to discharge counsel was a knowing and voluntary decision. Moreover, this case extends beyond a court's failure to use "magic words" or their synonyms, but rather whether there was a proper inquiry and colloquy to ensure that he was making a knowing and voluntary decision to waive his constitutional right to counsel with a full understanding of the consequences of his decision. As we explain later, that is the purpose of Rule 4-215. Therefore, under the circumstances of this case, we are persuaded that preservation is not governed by the contemporaneous objection requirement.[6]

*The Right to Counsel*

The Sixth Amendment to the United States Constitution and Article 21 of the

---

[6]We note that South Carolina has ruled similarly. *See State v. Rocheville*, 310 S.C. 20, 25 n.4 (1993) ("A notable exception to this general rule requiring a contemporaneous objection is found when the record does not reveal a knowing and intelligent waiver of the right to counsel. The *pro se* defendant cannot be expected to raise this issue without the aid of counsel." (Internal citation omitted)).

Maryland Declaration of Rights "'guarantee the right to counsel, including appointed counsel for an indigent, in a criminal case involving incarceration.'" *Broadwater v. State*, 401 Md. 175, 179 (2007) (quoting *Parren v. State*, 309 Md. 260, 262 (1987)); *see also Brye v. State*, 410 Md. 623, 634 (2009). The constitutional rights guaranteed "encompass not only the right of a defendant to the effective assistance of a duly licensed attorney at law but also the right of a defendant to appear *in propria persona*." *Parren v. State*, 309 Md. 260, 262-63 (1987) (internal citations omitted). Speaking in regard to the right to counsel in the Sixth Amendment to the Constitution of the United States, the Supreme Court has stated that the "Constitution does not force a lawyer upon a defendant. He may waive his Constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open." *Adams v. United States*, 317 U.S. 269, 279 (1943) (citing *Johnson v. Zerbst*, 304 U.S. 458, 468 (1938)).

To protect a criminal defendant's right to counsel, "courts indulge every reasonable presumption against [a] waiver [of the right to counsel.]" *Parren v. State*, 309 Md. at 263 (citing *Johnson v. Zerbst*, 304 U.S. at 464). Hence, any decision to proceed without the representation of counsel necessitates a meaningful inquiry into whether an accused has knowingly and voluntarily waived the assistance of counsel. *See id.* at 272-73 (internal citations omitted). In other words, the "duty [to conduct a waiver inquiry] cannot be discharged as though it were a mere procedural formality." *Von Moltke v. Gillies*, 332 U.S. 708, 722 (1948).

12

"Maryland Rule 4-215(e) was drafted and implemented to protect both the right to the assistance of counsel and the right to self-representation." *Pinkney v. State*, 427 Md. 77, 92 (2012) (citing *State v. Brown*, 342 Md. 404, 412 (1996)). Embodied within the Rule, however, is "the principle . . . that an unmeritorious discharge of counsel and request for new counsel, in an apparent effort to delay the trial, may constitute a waiver of the right to counsel." *Fowlkes v. State*, 311 Md. 586, 603 (1988).

To protect both the constitutional guarantees of the right to counsel and the right to proceed without representation, Maryland Rule 4-215 imposes an "order of procedure" to be followed

> by which the right to counsel may be waived by those defendants wishing to represent themselves, the modalities by which a trial judge may find that a criminal defendant waived implicitly his or her right to counsel . . . and the necessary litany of advisements that must be given to all criminal defendants before any finding of express or implied waiver of the right to be represented by counsel may be valid.

*Broadwater v. State*, 401 Md. 175, 180 (2007) (footnote omitted).

The Court of Appeals has made clear that "the requirements [of] Md. Rule 4-215 'are mandatory and must be complied with, irrespective of the gravity of the crime charged, the type of plea entered, or the lack of an affirmative showing of prejudice to the accused.'" *Broadwater*, 401 Md. at 182 (quoting *Taylor v. State*, 20 Md. App. 404, 409 (1974)). *Accord Pinkney*, 427 Md. at 87; *State v. Camper*, 415 Md. 44, 55 (2010); *Sinclair v. State*, 214 Md. App. 309, 321 (2013).

To further our discussion of Rule 4-215, we summarize the series of court appearances

13

that ultimately led to appellant going to trial without counsel.

- On May 15, 2012, appellant expressed disappointment with appointed counsel, but counsel was not discharged during that appearance.

- On June 8, 2012, appellant appeared in court and reiterated his wish to discharge counsel. The court granted the discharge after its finding appellant's reasons for doing so not to be meritorious and the discharge ill advised. The court advised the appellant of the scheduled trial date and encouraged him to get counsel, indicating that if new counsel had a "genuine reason" why he or she could not be present, the court would consider a postponement.

- On August 21, at the beginning of trial, the court addressed appellant's motion for the appointment of *pro bono* counsel and a postponement of the trial. The court denied the motion, stating ". . . you really sort of have the choice of representing yourself or hiring a private attorney, which I understand you're not able to do. And you did assure me that you wanted to represent yourself. So here we are."[7]

The discharge of counsel on June 8 would invoke the provisions of Rule 4-215(e).[8]

---

[7] Presumably the court is referring to appellant's statement on May 15 that he would represent himself or "die first" before he would "come to court with [appointed counsel]."

[8]   (e) **Discharge of counsel – Waiver.** If a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request. If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary; and advise the defendant that if new counsel does not enter an appearance by the next scheduled trial date, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel. If *the court permits the defendant to discharge counsel, it shall comply with*

(continued...)

14

Rule 4-215(e), in turn, refers to subsections (a)(1)-(4), and subsection (4) requires a waiver

inquiry pursuant to section (b) of the rule.

Rule 4-215(d)[9] applies if appellant's appearance without counsel on August 21, the

date set for trial, and the rejection of appellant's desire to have counsel appointed by the court

is to be understood as a "find[ing] that there [was no] meritorious reason for [appellant's]

appearance without counsel," coupled with a determination by the court that appellant had

waived his right to counsel by inaction. Md. Rule 4-215(d). In that situation, section (d),

---

(...continued)
> *subsections (a)(1)-(4) of this Rule if the docket or file does not reflect prior compliance.*

Md. Rule 4-215(e) (emphasis added).

[9]     (d) **Waiver by Inaction – Circuit Court.** If a defendant appears in circuit court without counsel on the date set for hearing or trial, indicates a desire to have counsel, *and the record shows compliance with section (a) of this Rule, either in a previous appearance in the circuit court or in an appearance in the District Court in a case in which the defendant demanded a jury trial*, the court shall permit the defendant to explain the appearance without counsel. If the court finds that there is a meritorious reason for the defendant's appearance without counsel, the court shall continue the action to a later time and advise the defendant that if counsel does not enter an appearance by that time, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds that there is no meritorious reason for the defendant's appearance without counsel, the court may determine that the defendant has waived counsel by failing or refusing to obtain counsel and may proceed with the hearing or trial.

Md. Rule 4-215(d) (emphasis added).

15

like section (e), requires that the "record shows compliance with section (a) of this Rule."

*Id.*

Thus, both sections of the Rule refer us back to section (a) of the Rule,[10] and the need to "[c]onduct a waiver inquiry pursuant to section (b) of [the] Rule."  Md. Rule 4-215(a)(4). Section (b), in turn, requires an examination on the record and a determination by the court and announcement on the record of a knowing and voluntary waiver of the right to counsel.[11]

---

[10]**Rule 4-215.  Waiver of counsel.**

(a)  **First appearance in court without counsel**.  At the defendant's first appearance in court without counsel, or when the defendant appears in the District Court without counsel, demands a jury trial, and the record does not disclose prior compliance with this section by a judge, the court shall:

(1)  Make certain that the defendant has received a copy of the charging document containing notice as to the right to counsel.

(2)  Inform the defendant of the right to counsel and of the importance of assistance of counsel.

(3)  Advise the defendant of the nature of the charges in the charging document, and the allowable penalties, including mandatory penalties, if any.

(4)  Conduct a waiver inquiry pursuant to section (b) of this Rule if the defendant indicates a desire to waive counsel.

[11]  (b)  **Express Waiver of Counsel.**  If a defendant who is not represented by counsel indicates a desire to waive counsel, the court may not accept the waiver until after an examination of the defendant on the record conducted by the court, the State's Attorney, or both, the *court determines and announces on the record that the defendant is knowingly and voluntarily waiving*

(continued...)

16

Md. Rule 4-215(b).  The record does not reflect a determination or an announcement during

the various proceedings or even substantial compliance through the use of synonyms for

"knowingly" or "voluntarily" but, more importantly, even a pointed inquiry directed at that

aspect of the Rule.[12]  Nor was he clearly informed, in accordance with section (e), that the

"trial will proceed as scheduled" without him being represented if, after a non-meritorious

discharge of counsel, he does not engage new counsel.  Md. Rule 4-215(e).  The Court of

Appeals in *State v. Zimmerman*, 261 Md. 11, 13 n. 1 (1971), regarded "knowingly" as

synonymous with "intelligently," and referencing Black's Law Dictionary 888 (8th ed. 2004),

defined "knowingly" as "having or showing awareness or understanding." The Court did so

_____

[11](...continued)

> *the right to counsel*.  If the file or docket does not reflect
> compliance with section (a) of this Rule, the court shall comply
> with that section as part of the waiver inquiry.  The court shall
> ensure that compliance with this section is noted in the file or on
> the docket.  At any subsequent appearance of the defendant
> before the court, the docket or file notation of compliance shall
> be prima facie proof of the defendant's express waiver of
> counsel.   After there has been an express waiver, no
> postponement of a scheduled trial or hearing date will be
> granted to obtain counsel unless the court finds it is in the
> interest of justice to do so.

Md. Rule 4-215(b) (emphasis added).

[12]The contention now before us had not been addressed by our appellate courts. We recognize and applaud the efforts made by the trial judge to discourage discharge of counsel in this case and  patience shown by him toward appellant in this matter.  We further recognize that any omission involved perhaps resulted because the discharge was addressed over several hearings and the motion requesting appointed counsel was not considered until the day of trial.

17

again in *Nalls v. State*, 437 Md. 674, ___ (slip op. p. 11) (2014). As to "voluntary," citing *Wills v. Jones*, 340 Md. 480, 495 (1995), the *Nalls* Court stated that a voluntary action is "an exercise of 'unconstrained will' and is 'intentional.'" *Nalls*, 437 Md. at __ (slip op. p. 11).

We are not persuaded that the determination and announcement provisions of Rule 4-215(b) are not implicated under the facts of this case. Westray initially had counsel, whom he discharged for reasons found to be without merit. At the hearing he indicated that he would find private counsel. When he later appeared in circuit court before trial he was clearly "indicat[ing] a desire to have counsel" and seeking the appointment of *pro bono* counsel and a continuance. When the court denied his request for appointed counsel and asked Westray if he still wanted to postpone the case, Westray responded he did "need" an attorney. The fact that when the court denied his request, he proceeded without counsel did not indicate a voluntary decision to proceed without counsel or that he discharged counsel with full knowledge of the possible consequences. On its face and in context, it appears to be little more than an acknowledgment that the trial will proceed.

That a defendant clearly understands when he or she discharges counsel that the trial may go on if he appears without counsel and that his appearance can be considered as an implied waiver of the right to counsel is essential to a knowing and voluntary discharge of counsel. Even an implied waiver of the right to counsel that is triggered by the discharge of a particular counsel should be grounded in a clear understanding of the consequences attendant to appearing in court for trial without counsel and the court's inquiry and

18

determination in that regard be reflected on the record.  To proceed without counsel because one has discharged counsel with the hope of engaging private counsel may not be knowing and voluntary in the sense that a defendant has made a decision to proceed without counsel, but  the discharge of counsel may still be voluntary and knowing in the sense that the defendant chooses to discharge counsel fully aware of that possible outcome.

The Court of Appeals decision in *Valonis v. State*, 431 Md. 551 (2013), addressed jury trial waivers governed by Rule 4-246(b).  Prior to the 2007 amendment, which took effect on January 1, 2008, Rule 4-246(b) provided that "[t]he court may not accept the waiver until it determines, after an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that the waiver is made knowingly and voluntarily."[13]  That Rule, as does Rule 4-215(b), now provides that the court not only make this determination, but also "announce[] on the record that the waiver is made knowingly and voluntarily."  Md. Rule 4-246(b).  The Rules Committee recommended, and the Court of Appeals approved, similar changes to Rule 4-215(b) and 4-242(c), (d).  Prior to these amendments, trial courts "look[ed] to the totality of the circumstances to determine whether the waiver was valid."  *Valonis v. State*, 431 Md. 551, 563 (2013) (internal citations omitted).  The *Valonis* Court, applying Rule 4-246(b) as amended, held that the trial courts in the two consolidated cases before it had "committed

---

[13]The State's reliance on *Hawkins*, which was decided prior to the 2007 amendments, is, in our view, misplaced.

19

reversible error in failing to comply with the determine and announce requirement of Rule 4-246(b) and thereby failed to demonstrate a valid waiver of [the appellants'] right to a trial by jury." *Id.* at 570 (internal citations omitted).

Just as a jury trial is a fundamental constitutional right, so is the right to counsel and its waiver also requires a knowing and voluntary decision. Confronted with the same language and the Court's reasoning in *Valonis*, we cannot say that the requirement of a determination and announcement on the record of a knowing and voluntary waiver of counsel is any less essential than it is in the case of a jury trial waiver. It follows that the "determine and announce" provision added to the waiver of counsel provisions in Rule 4-215(b) serves the same purpose, and thus requires no less compliance than the language did in Rule 4-246(b). *See generally Valonis v. State*, 431 Md. at 569 (quoting *State v. Camper*, 415 Md. 44, 55 (2010)). *See also*, *Morgan v. State*, 438 Md. 11, __ (slip op. p. 15-16) (2014) (trial judge's announcement after a plea colloquy that appellant had knowingly and voluntarily waived his right to a jury trial was sufficient because of the "thoroughness of the jury waiver colloquy" the "temporal proximity" of the jury trial waiver to the plea colloquy, and "the judge's mention of the jury trial waiver at the commencement of the plea colloquy."); *Szwed v. State*, 438 Md. 1(slip op. p. 4-5) (2014) ("trial judge's announcement that [appellant] 'made a free and voluntary election of a court trial' did not comply with Rule 4-246(b)" because "nowhere did the trial judge acknowledge that [appellant's] waiver was made 'knowingly.'"); *Nalls*, 437 Md. 674, __ (slip op. p.11-12) (2014) ("So long as the trial judge

determines that a waiver is made both 'knowingly' and voluntarily,' or uses synonyms that represent the same concepts, the court will have complied fully with Rule 4-246(b). . . . Addressing only one of the two concepts is not enough."). If addressing only one concept is not enough, addressing neither is not enough.

## II. Appointment of counsel

Because this issue may arise in the event of a retrial,[14] we will address Westray's challenge to the trial court's refusal to appoint a panel attorney or *pro bono* counsel. We reject Westray's contention.

> There are in Maryland
>
> two options available for defendants in criminal cases who are financially unable to retain their own counsel. The first option is representation by the Public Defender's Office as authorized by Maryland Code [(2001, 2008 Repl. Vol., 2012 Supp.), § 16-210 of the Criminal Procedure Article (Public Defender Act)]. If the Public Defender's Office determines it is unable to represent a defendant due to his or her income, the court must conduct its own inquiry as to whether the defendant qualifies for a court-appointed counsel.

*Davis v. State*, 100 Md. App. 369, 380 (1994) (internal citations omitted). Section 16-213 of the Public Defender Act provides for the appointment of counsel by the court in the event of a conflict of interest or where the Public Defender's Office declines to represent the accused.[15]

---

[14]As noted, Westray does not challenge the sufficiency of the evidence. "Retrial would not be permitted if the evidence were insufficient to sustain [Westray's] convictions." *Hawkins v. State*, 130 Md. App. 679, 688 n. 3 (2000) (citation omitted).

[15]**§ 16-213. Effect of subtitle.**

(continued...)

In *State v. Walker*, 417 Md. 589, 598 (2011), the Office of the Public Defender had declined to represent Walker, deeming her to be ineligible for representation through the OPD. When Walker appeared before the circuit court, she informed the judge of the OPD's decision, and, further, told the court that she could not afford an attorney. *Id.* at 594. She went to trial without the assistance of counsel, and this Court reversed. *Walker v. State*, 190 Md. App. 577, 580 (2010), *aff'd*, 417 Md. 589 (2011).

In *Walker v. State*, citing *Baldwin v. State*, 51 Md. App. 538 (1982) and *Davis v. State*, 100 Md. App. 369 (1994), we determined that "the holdings [in those cases] compel the conclusion that the trial court erred by not conducting an indigence inquiry when it became aware that appellant was found ineligible for representation by the Public Defender's Office

[15](...continued)

> This subtitle does not prohibit the appointment of an attorney, other than through the Office, to represent an indigent individual by the District Court, a circuit court, or the Court of Special Appeals if:
>
> > (1) there is a conflict in legal representation in a matter involving multiple defendants, and one of the defendants is represented by or through the Office; or
> >
> > (2) the Office declines to provide representation to an indigent individual entitled to representation under this subtitle.

Md. Code (2001, 2008 Repl. Vol., 2013 Supp.), § 16-213 of the Criminal Procedure Article ("C.P.").

22

but could not afford private counsel." *Walker v. State*, 190 Md. App. at 592. Concluding

that the circuit court was required to inquire whether Walker was eligible for court-appointed

counsel, Judge Matricciani, writing for the Court, observed:

> Pursuant to Maryland law, two options are available to defendants in criminal cases who are financially unable to retain their own counsel. *Davis v. State*, 100 Md. App. 369, 380, 641 A.2d 941 (1994). The defendant may seek representation from the Public Defender's Office. Section 16–210(a) of the Criminal Procedure Article ("C.P.") of the Maryland Code (2001, 2008 Repl.Vol.) provides that "[a]n individual may apply for services of the Office as an indigent individual, if the individual states in writing under oath or affirmation that the individual, without undue financial hardship, cannot provide the full payment of an attorney[.]" Eligibility for Office of the Public Defender's services shall be determined by the need of the applicant, which "shall be measured according to the financial ability of the applicant to engage and compensate a competent private attorney and to provide all other necessary expenses of representation." Section 16–210(b)(1)–(2). The statute lists six factors in determining an applicant's financial ability: (1) the nature, extent, and liquidity of assets; (2) the disposable net income of the applicant; (3) the nature of the offense; (4) the length and complexity of the proceedings; (5) the effort and skill required to gather pertinent information; and (6) any other foreseeable expense. Section 16–210(b)(3)(i)–(vi).

> Additionally, defendants may seek representation from a court-appointed attorney. C.P. § 16–213 provides that "[t]his subtitle does not prohibit the appointment of an attorney to represent an indigent individual by the District Court, a circuit court, or the Court of Special Appeals if . . . the Office declines to provide representation to an indigent individual entitled to representation under this subtitle."

*Walker v. State*, 190 Md. App. at 585.

In upholding our determination in *Walker v. State*, Judge Harrell, writing for the Court

of Appeals, stated:

> In conclusion, we hold that, under the prevailing constitutional and statutory framework, it is incumbent upon a trial court, upon learning that a

23

defendant in a criminal case has been denied representation by the OPD and who maintains nonetheless an inability to afford to retain private counsel, to conduct its own independent indigency inquiry, in accordance with the statutory criteria, to determine if the defendant is entitled to court-appointed counsel.

*State v. Walker*, 417 Md. at 607-08.

Here, the Office of the Public Defender did not decline to represent Westray. In *Fowlkes v. State*, *supra*, the Court of Appeals stated that "unless the defendant can show a meritorious reason for the discharge of current counsel, the appointment of substitute counsel is simply not an option available to defendant." 311 Md. at 605-06. In short, the court neither erred nor abused its discretion because once appellant discharged his assigned public defender without a meritorious reason, he limited his options to hiring private counsel or representing himself.[16]

### III. Search and Seizure warrant based on false information.

Westray also asserts that the search warrants that authorized the seizure of evidence found at his grandmother's residence and in a vehicle operated by him were based on false or incorrect facts:

> Police obtained warrants to search a residence and a vehicle and ultimately found items belonging to several of the victims of the charged offenses as a result of those searches. In cross-examination, one investigating officer acknowledged that an address listed in the warrant application as Mr. Westray's address was incorrect and that the warrant application incorrectly stated that Mr. Westray was arrested on January 5, 2012 when, in fact, he was

---

[16]We express no opinion as whether Westray would be entitled representation through the Office of the Public Defender in a retrial of this case.

24

arrested on January 6, 2012. It is well settled that evidence seized pursuant to a warrant may be suppressed when, inter alia, the warrant application contains a false statement of material fact and the person executing the application had either knowledge that the statement was false or executed the application with reckless disregard for the truth. *See, e.g., Franks v. Delaware,* 438 U.S. 154 (1978), *Winters v. State,* 301 Md. 214, 226-27, 482 A.2d 886' (1984). It is Mr. Westray's personal position that the information supporting the warrant in this case rose to this level and, thus, warranted suppression of the fruit of this search.

Westray acknowledges that "this argument was not raised via a formal suppression motion[,]" but urges a "limited remand" to "explore this issue," or, in the alternative, he blames his failure to bring this to the trial court's attention on his *pro se* status. In the event of a new trial, a challenge to the search warrant may be raised, but it is not preserved for review in this appeal.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED AND REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION. EACH PARTY TO BEAR ½ COSTS.**