*State of Maryland v. William Westray*, No. 74, September Term, 2014.


**CRIMINAL PROCEDURE — RIGHT TO COUNSEL — DISCHARGE OF COUNSEL:** When a trial court permits a defendant in a criminal case to discharge defense counsel without a "meritorious" reason for doing so, Rule 4-215(e) requires the trial court to advise the defendant in accordance with Rule 4-215(a)(1) through (a)(4), including a "waiver inquiry" pursuant to Rule 4-215(b). To the extent that such a defendant asserts that the waiver inquiry was deficient because the court did not make an explicit finding on the record that the defendant was acting knowingly and voluntarily, the defendant must preserve the issue by making a contemporaneous objection if the defendant is represented by counsel at the time of the waiver inquiry.


**CRIMINAL PROCEDURE — RIGHT TO COUNSEL — APPOINTMENT OF COUNSEL FOLLOWING DISCHARGE OF PRIOR APPOINTED COUNSEL:** Although a trial court has inherent authority to appoint counsel for defendant in a criminal case, the court need not exercise that authority when a defendant discharges an assigned assistant public defender without a meritorious reason for doing so.

Circuit Court for Montgomery County
Case No.: Criminal No. 120275
Argued: June 3, 2015

IN THE COURT OF APPEALS
OF MARYLAND

No. 74

September Term, 2014

STATE OF MARYLAND

v.

WILLIAM WESTRAY

Barbera, C.J.
*Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

PER CURIAM

Filed: August 27, 2015

* Harrell, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

The question of how to deal with an indigent defendant who wishes to discharge his appointed counsel has bedeviled trial courts, as demonstrated by the many decisions of this Court and the Court of Special Appeals construing Maryland Rule 4-215(e), which governs the discharge of defense counsel. This Court recently had occasion to discuss application of the rule when the indigent defendant has a "meritorious" reason for discharge of an assistant public defender appointed to represent him.[1] This case concerns a parallel situation with the exception that the trial court found that the indigent defendant did *not* have a meritorious reason for discharging counsel.

## BACKGROUND

**A.**   **Maryland Rule 4-215(e)**

Maryland Rule 4-215(e) provides as follows:

> If a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request. If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary; and advise the defendant that if new counsel does not enter an appearance by the next scheduled trial date, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel. If the court permits the defendant to discharge counsel, it shall comply with subsections (a)(1)-(4) of this Rule if the docket or file does not reflect prior compliance.

---

[1] *Dykes v. State*, ___ Md. ____ (2015), No. 70 (Sept. Term 2014)**.**

In *Dykes v. State*, ___ Md. ____ (2015), we suggested that the rule can be broken down into three steps:

> *(1) The defendant explains the reason(s) for discharging counsel*
>
> While the rule refers to an explanation by the defendant, the court may inquire of both the defendant and the current defense counsel as to their perceptions of the reasons and need for discharge of current defense counsel.
>
> *(2) The court determines whether the reason(s) are meritorious*
>
> The rule does not define "meritorious." This Court has equated the term with "good cause." This determination – whether there is "good cause" for discharge of counsel – is an indispensable part of subsection (e) and controls what happens in the third step.
>
> *(3) The court advises the defendant and takes other action*
>
> The court may then take certain actions, accompanied by appropriate advice to the defendant, depending on whether it found good cause for discharge of counsel – *i.e.,* a meritorious reason.

*Dykes*, slip op. at 6-9 (citations and quotation marks omitted).

If, in the third step, the court finds that the defendant does not have a meritorious reason for discharge of counsel, it is to proceed as follows:

> If … the court finds that there is no meritorious reason for discharge of defense counsel, the court is to:
>
> • advise the defendant that the trial will proceed as originally scheduled
>
> • advise that the defendant will be unrepresented if the defendant discharges counsel and does not have new counsel

2

- conduct further proceedings in accordance with [Rule 4-215(a)] – which governs a defendant's first appearance in court without counsel – *if there has not been prior compliance*

*Id.* at 8-9 (emphasis added).

## B.     Charges, Discharge of Defense Counsel, Trial, and Disposition

From early December 2011 to early January 2012, a series of daytime home burglaries bearing similar characteristics occurred in Potomac and Rockville, Maryland. A law enforcement investigation of a white Volvo seen near an attempted burglary led police to Respondent William Westray. Searches of Westray's vehicle and home yielded multiple pieces of jewelry and small electronics stolen from the burglarized homes.

Westray was arrested in February 2012. He was found to be qualified on the basis of indigency for representation by the Office of the Public Defender ("OPD") and an assistant public defender was assigned to represent him. On March 22, 2012, a grand jury in the Circuit Court for Montgomery County indicted Westray on 24 counts of burglary, theft, and related offenses.

In a series of pretrial hearings held over several months by the Circuit Court, Westray expressed dissatisfaction with his assistant public defender. At various times, he indicated that he would obtain the services of a private attorney with the financial help of family members or that he would represent himself. The Circuit Court found that Westray did not have a meritorious reason for discharging his assigned counsel and warned Westray that an attorney would be helpful to him and that he might find himself in the position of having to represent himself. But Westray carried through with discharging his attorney. Later, less than a month before the scheduled trial date, Westray filed a motion asking the

3

court to help him obtain "pro bono counsel." The Circuit Court declined to do so, expressing doubt about its power to appoint counsel other than through the OPD.

The trial proceeded as scheduled with Westray representing himself. The jury returned guilty verdicts on 21 of the 22 counts that went to trial. The Circuit Court later sentenced Westray to a cumulative 60-year prison term.

## C.    Appeal

Westray appealed. The Court of Special Appeals reversed, holding that the Circuit Court failed to comply with the requirement of Maryland Rule 4-215(b) that "the court determin[e] and announc[e] on the record that the defendant is knowingly and voluntarily waiving the right to counsel." 217 Md. App. 429, 450, 94 A.3d 134 (2014). In dicta, the intermediate appellate court stated that the trial court had acted within its discretion when it did not appoint new counsel after it permitted Westray to discharge his assistant public defender. Observing that "the [OPD] did not decline to represent Westray," the intermediate appellate court reasoned that "the [Circuit C]ourt neither erred nor abused its discretion because once [Westray] discharged his assigned public defender without a meritorious reason, he limited his options to hiring private counsel or representing himself." 217 Md. App. at 453.

The State filed a Petition for Writ of Certiorari, and Westray filed a Conditional Cross-Petition for Writ of Certiorari, both of which we granted, to consider the following questions:

> 1. Did the Court of Special Appeals err in determining that, where Westray was represented by counsel and requested discharge of counsel, the trial court was required to

4

determine and announce on the record that he was knowingly and voluntarily waiving the right to counsel?

2. Did the Circuit Court abuse its discretion in denying Mr. Westray's request for the appointment of counsel by repeatedly stating that it lacked the power to appoint counsel to assist Mr. Westray?[2]

Before we address these questions, it is useful to set out in some detail the sequence and substance of the dialogue between the Circuit Court and Westray at the several hearings that focused on his dissatisfaction with his defense counsel and his desires as to representation.

## D.    Hearings Concerning Discharge and Appointment of Defense Counsel

Shortly after the indictment was returned, the assistant public defender entered his appearance on behalf of Westray and immediately sought discovery and filed various motions. Westray, however, apparently expressed dissatisfaction with his representation to this attorney and, on April 23, 2012, the assistant public defender filed a Defendant's

---

[2] This second question comes from Westray's Cross-Petition for Writ of Certiorari. We have slightly rephrased it for clarity, retaining its essence. The original question presented in Westray's Cross-Petition is:

> Did the [Circuit Court] abuse its discretion in denying Mr. Westray's request for the appointment of *pro bono* counsel, by repeatedly stating that it lacked the power to appoint *pro bono* counsel to assist Mr. Westray?

(Emphasis added.) Consistent with the Motion for Pro Bono Screening he filed before trial, Westray uses "pro bono counsel" to refer to an attorney whom he does not need to pay. "Pro bono," of course, means that not only does the client not need to pay, but also the attorney represents the client without compensation. *Moore v. State*, 390 Md. 343, 408 n.11, 889 A.2d 325, 363 n.11 (2005) (Bell, C.J., dissenting) ("*Pro bono* representation envisions providing legal services without compensation[.]" (citation and internal quotation marks omitted)).

Motion to Inquire Regarding Counsel on behalf of Westray. The Circuit Court held a hearing on May 15, 2012, to deal with that motion.

*May 15, 2012 Hearing*

At the hearing on May 15, the Circuit Court had the following discussion with Westray:

| Court: | ... And I want to make sure that you're well represented. |
|---|---|
| Westray: | I mean this man is an idiot, sir. ... You might as well going to kill me. I'm not going into a courtroom with this man. |

*       *       *

I will represent myself and I would die first before I, before I, before I come to court with this man, okay?

After several unsuccessful attempts to ask Westray to describe any meetings he had with the assistant public defender, the court turned to defense counsel. The assistant public defender said that he had met with Westray early in the case and had obtained biographical information, but that Westray "wouldn't engage with me." The assistant public defender said that he had contacted family members to explore whether Westray was competent to stand trial, but had not gotten a clear answer on that question. He had not received any particular directions from Westray as to how to defend the case, other than Westray telling him that he was "fired." The District Public Defender for Montgomery County also appeared at the hearing and explained to Westray on the record that his office could not assign him a particular lawyer of his choosing.

The court then inquired whether Westray had the means to hire new counsel. Westray indicated that he might be able to do so:

| Court: | … but do you have a private attorney who could represent you in this case? |
|---|---|
| Westray: | I could find one. I can get the money and find one. |
| Court: | Well, do you want the opportunity to do that? |
| Westray: | Yes. Yes, I do, sir. |

The court then advised Westray that the assistant public defender could forward discovery and other information to any new attorney that he would retain. The court postponed resolution of the motion to discharge counsel for a month. Although the court had not finally resolved the discharge motion, it proceeded to advise Westray in accordance with Rule 4-215(a)(1) through (a)(4).[3] In particular, it ensured that Westray had a copy of the indictment, recited the charges set forth in the indictment, and advised Westray of the maximum penalty for the various charges. The court then stressed the importance of counsel:

| Court: | So, obviously, ... I don't have to tell you, you're facing a substantial amount of charges. And, of course, as the State's Attorney pointed out, you've got 22, 24 counts. |
|---|---|
| | So an attorney can be of assistance to you at trial. I mean even if you are guilty of any of these offenses, an attorney can help you in the event you're convicted to explain to the Judge why you should get a lesser sentence. So it's very important, obviously, that you have an attorney. |
| | Now you already know, because you have been represented by the Public Defender, that you may be entitled to representation by the Public Defender. But as has been pointed out to you by the [District Public Defender], if you are dissatisfied with [the |

---

[3] As noted above, Rule 4-215(e) requires a court to advise a defendant in accordance with subsections (a)(1) through (a)(4) of Rule 4-215 if it permits discharge of an attorney and "if the docket or file does not reflect prior compliance." Rule 4-215(e).

assistant public defender], it is their policy, meaning the Public Defender's policy, that you can't be represented by another member of the office.

In other words, you don't have the right to choose which Public Defender is going to represent you.

You also have the right to be represented by a private attorney which you've indicated to me you're going to try to do. So it's very important that you attend to that as quickly as possible, because if you come back here in 30 days when we have the new hearing and you tell me, "Judge, I don't have a, I can't afford a private attorney," then you're going to have to make that decision which it sounds like you've already made, that you don't want to have [the assistant public defender] represent you and you're going to have to represent yourself, which I wouldn't recommend because you're not a trained lawyer.

Now I'm not suggesting you should discharge [the assistant public defender], but I think it would be a good idea for you to at least think about this over the next 30 days. If you get ... the private attorney, that's fine. We can deal with that. But if not, in 30 days you're going to have to tell me, Judge, I want to fire [the assistant public defender] or I want to keep him and I'll respect whatever that decision is.

At the conclusion of the hearing, at the suggestion of the assistant public defender, Westray agreed to meet with the District Public Defender to provide any specific complaints he had about his representation. The court scheduled another hearing on the matter for June 8.

*June 8, 2012 Hearing*

At the outset of the hearing on June 8, the assistant public defender re-capped what had happened at the May hearing. In Westray's presence, he advised that court that, based on his meetings and discussions with Westray, that he had "no doubt" that Westray was competent in the sense of understanding the proceedings and the importance of counsel.

8

He also said that he thought Westray was capable of working with counsel on his defense, but "I think he just is unwilling to work with present counsel and I think that's a voluntary decision on his part …." The assistant public defender also said that he had reiterated to Westray that "[i]f it's determined today by the Court that his discharge is, it's voluntary and it is not for cause, ... if current counsel is not ineffective, the Office of the Public Defender is not going to appoint another attorney to represent him."

The court was then advised by counsel that plea discussions would not resolve the case, and the court proceeded to address Westray about the discharge motion:

Court:	So tell me what it is that you would like to do? Do you want to discharge [the assistant public defender]?

Westray:	Yes, sir.

\*	\*	\*

Court:	Okay. Have you decided whether you want to represent yourself or are you going to retain –

Westray:	I'm representing myself. I already started the process, Your Honor.

The court then repeated some of the advice it had given at the previous hearing about the advisability of having counsel and then provided its assessment of Westray's reason for discharging counsel:

Court:	Okay. Well, let me first say I've known [the assistant public defender] professionally a long time. He's tried a lot of cases, a lot of motions, a lot of hearings before me. He's very good at what he does. He does it every day. And it seems to me that the reason that you want to fire him is for whatever reason you don't like him and that's your prerogative, but I don't find merit in the reasons you've advanced for firing him.

9

> So I've concluded that it will be appropriate, since you can't work with him, to discharge him, but we're not going to change the trial date. You understand that, right?

Westray:             Okay.

The court concluded by again encouraging Westray to obtain counsel. It then made sure that Westray had a copy of the indictment and would receive copies of the State's discovery. The court then noted on the record its "previous compliance with 4-215(a)," noted that it had stressed the importance of an attorney to Westray, that his reason for discharge of the OPD was not meritorious, that the appearance of the OPD on his behalf was stricken, and that, "if Mr. Westray continues to want to represent himself, I'm going to permit him to do that." The court indicated that it would revisit the issue of representation, if necessary, at a motions hearing previously scheduled for two weeks later.

*June 21, 2012 Hearing*

On June 21, the Circuit Court held a "status hearing" on Westray's representation. The court recounted that the assistant public defender had been discharged, reiterated its advice that it would be a "good idea" for Westray to have counsel, and inquired as to Westray's current position. Westray confirmed that he wished to represent himself. The remainder of the hearing was devoted to Westray's complaint about the breadth of a search of his home pursuant to a search warrant.

*August 21, 2012 Hearing*

On August 1, 2012, three weeks before the trial was set to commence, Westray filed a "Motion for Pro Bono Screening." In that motion Westray noted his prior conflict with

10

the OPD, and stated that he was unable financially to retain private counsel. Citing a court rule that provides for the creation of local *pro bono* plans that screen clients for referral for *pro bono* representation,[4] Westray asked the court to "grant a pro bono screening." Westray also sought a postponement of his trial.

The Circuit Court took up both motions on the morning of trial. The court first summarized the prior hearings:

Court:
Now before I hear you in argument, I want to remind you of a couple things. You were back before me in May because [the assistant public defender] was concerned that he was going to be fired and wanted a hearing so I could determine what the status was regarding your counsel.

And I at that time advised you of your right to counsel because you hadn't previously been advised since you were represented by counsel. And I explained to you that an attorney could be of assistance to you during the trial. Even if you were found guilty, an attorney would be helpful in explaining to a judge that a lesser sentence might be appropriate in your case.

But we set another hearing on June 8th because I actually had tried to dissuade you in May from firing [the assistant public defender].

At the June 8th hearing, I informed you that I would let you discharge [the assistant public defender]; however, that you needed to understand that under the law of this state, when you fire your Public Defender, you don't get the choice of another free attorney.

And I didn't find any merit in your reason for firing [the assistant public defender]. I think he's a fine attorney. I know you didn't like him and I appreciate that, but you assured me at that time that you wanted to go ahead and represent yourself. And I told you that if you obtained new

_____

[4] Maryland Rule 16-902(c).

counsel and that new counsel had a trial conflict, I would be glad to consider postponing the matter.

The court then turned to the motion at hand:

| | |
|---|---|
| Court: | So now here in early August you now say, "Well, I want, I want you to appoint a pro bono attorney for me." I don't know that I have any power to do that. The only provision that I'm aware of in a criminal case for representation of the indigent, at least through a state agency, is the Public Defender. And as I said, you're not allowed to pick and choose Public Defenders. So do you still want me to postpone this case? |
| Westray: | Yes. |
| Court: | Tell me why you want me to postpone the case? |
| Westray: | Because I do need pro bono attorney. I do need that. |
| Court: | But you're asking the Court to appoint that pro bono lawyer? |
| Westray: | Yes. |
| Court: | No. I don't know that I have the power to do that. I don't – pro bono work, first of all, means somebody who is going to, who is going to work for you for free and I don't know of too many attorneys that would do that. Now the Public Defender's Office, they're paid by the state to represent indigent defendants. But, as I said, you chose to get rid of [the assistant public defender].<br><br>...<br>The point is now that you're really, since you let the Public Defender go, you really sort of have the choice of representing yourself or hiring a private attorney, which I understand you're not able to do. And you did assure me that you wanted to represent yourself. So here we are. |
| Westray: | So be it, man. I represent myself, I don't need, I don't need it, brother. |

The court then denied Westray's motion for a postponement.

**DISCUSSION**

**A.    Failure to "Determine and Announce"**

As outlined above, a circuit court must navigate three steps to carry out the requirements of Rule 4-215(e) when a defendant seeks to discharge counsel. There is no question that the Circuit Court here covered the first two steps – (1) the court ascertained Westray's reasons for seeking to discharge counsel, from both Westray himself and his assigned public defender and (2) the court explicitly decided whether Westray had a meritorious reason for the discharge, finding that he did not.

In the third step under the rule, the Circuit Court was to:

- advise the defendant that the trial will proceed as originally scheduled

- advise that the defendant will be unrepresented if the defendant discharges counsel and does not have new counsel

- conduct further proceedings in accordance with [Rule 4-215(a)(1)-(4)] – which governs a defendant's first appearance in court without counsel – *if there has not been prior compliance*

Again, there is no dispute that the Circuit Court amply and repeatedly covered the first two items on this list in its dialogues with Westray. The only dispute concerns whether the court adequately covered subsection (a)(4), which directs the court to "conduct a waiver inquiry pursuant to [Rule 4-215(b)] if the defendant indicates a desire to waive counsel." Section (b) of the rule provides for an examination of the defendant on the record concerning his desire to waive counsel, following which the court "determines and

13

announces on the record that the defendant is knowingly and voluntarily waiving the right to counsel."

Westray argues that the Circuit Court failed to "determine and announce" that Westray was acting knowingly and voluntarily, when Westray effectively waived the right to counsel by discharging his appointed assistant public defender for a reason that was not meritorious. The State argues that the "determine and announce" requirement of section (b) is not applicable – that the Circuit Court was required only to conduct a "waiver inquiry" and did not need to make an explicit finding. The State further argues that, in any event, Westray failed to preserve this issue when he did not object to the Circuit Court's failure to make an explicit finding.

The Court of Special Appeals held that there was no need for Westray to make a contemporaneous objection to preserve the issue. It reasoned that a defendant who discharges counsel is not required to make a contemporaneous objection because a defendant without representation cannot be expected to understand and to make a necessary objection. The intermediate appellate court also held that the "determine and announce" provision is an integral part of the "waiver inquiry" under Rule 4-215(b) and that the Circuit Court's failure to make an explicit finding required reversal of Westray's convictions.

We need not resolve whether the "determine and announce" requirement of section (b) always applies when a court is carrying out the dictates of Rule 4-215(e). In our view, in the particular circumstances of this case, Westray was required to make a contemporaneous objection to preserve the issue.

14

In *Nalls v. State,* 437 Md. 674, 89 A.3d 1126 (2014), we dealt with a similar provision in Rule 4-246(b), which governs the waiver of a jury trial by a criminal defendant and which requires a circuit court, after examining the defendant on the record, to determine and announce whether the defendant is making that choice knowingly and voluntarily. Although we dispensed with the requirement in that particular case, we indicated in *Nalls*, consistent with Rule 8-131(a), that a defendant who seeks to overturn a conviction on the ground that the court did not make the requisite finding on the record must preserve the issue before the circuit court by making a contemporaneous objection. 437 Md. at 691-94.

We agree with the Court of Special Appeals that, in many instances under Rule 4-215, it may be unfair to expect a lay defendant to know the rule and to require a contemporaneous objection if the defendant is *pro se* – *e.g.*, if counsel has never been appointed or has already been discharged. But that is not this case.

The Circuit Court conducted the litany under subsections (a)(1) through (a)(4) at the first hearing on the discharge of counsel on May 15, 2012, and further explored whether Westray was acting voluntarily and with full knowledge of the consequences of his decision during the second hearing on June 8, 2012 – all of which occurred prior to the discharge of counsel. As is evident from the transcript of those hearings, it is indisputable that the Circuit Court was painstaking in its effort to ensure that Westray's effort to discharge counsel was truly his own decision and that he was aware of the consequences of that decision. Indeed, there was explicit discussion between the court and counsel about Westray's competence and voluntariness in making the decision. At the June 8 hearing,

15

the assistant public defender explained to the court that Westray was both competent and acting voluntarily at that hearing – assertions that the court obviously accepted. It is true that the court did not explicitly state that it found Westray to be acting knowingly and voluntarily, but the court clearly was exploring those issues at the hearing and, just as clearly, concluded that Westray was acting knowingly and voluntarily when it permitted the discharge of counsel. Thus, at the time the court arguably failed to comply with the "determine and announce" requirement, Westray was represented by counsel and the requirement of a contemporaneous objection applied.

Westray's appointed counsel was not discharged until the end of the second hearing on June 8. Rule 4-215(e) did not require the court to repeat the litany required by subsections (a)(1) through (a)(4) at that hearing as there had been "prior compliance" with that requirement, as the court itself noted on the record.

## B.     Failure to Appoint Substitute Counsel

As we recently stated in *Dykes, supra*, slip op. at 4-5, a trial court has inherent authority to appoint counsel as necessary to carry out its constitutional function – authority that may be necessary to invoke when the OPD is unavailable to represent an indigent defendant who has a constitutional right to the appointment of counsel furnished by the State.[5] However, when an indigent defendant discharges appointed counsel without a meritorious reason, the court may regard the discharge as a waiver of counsel, if it is done

---

[5] In *Dykes*, the circuit court found that the defendant had a meritorious reason for discharging the assigned assistant public defender. We held that, if the OPD were to decline to provide another attorney to represent the defendant, it would be necessary for the court to exercise its inherent authority to appoint new counsel.

knowingly and voluntarily. *See Fowlkes v. State,* 311 Md. 586, 604, 536 A.2d 1149 (1988). Moreover, the trial court has no obligation to exercise its inherent authority to appoint substitute counsel when it finds that an indigent defendant lacks good cause to discharge appointed counsel. *Dykes*, slip op. at 27 n.19.

Here, the Circuit Court clearly regarded Westray's decision to discharge counsel as a waiver of counsel, unless Westray could obtain private counsel with the funds that he asserted he expected to obtain. Shortly before trial, Westray belatedly asked for referral to a *pro bono* program. The court was skeptical about its authority to provide counsel outside of the OPD, particularly as Westray appeared to be asking for a lawyer who would not be paid.[6] In its discussion with Westray during the August 21 hearing, the court did not resolve its doubts about its authority to appoint counsel, but clearly stated that it would not do so. Although the court may not have been fully aware of its inherent authority to appoint counsel when necessary, it did not abuse its discretion in declining to do so for Westray, when Westray lacked good cause for discharging his assigned assistant public defender.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**

---

[6] Given our resolution of this issue, we need not speculate on how an attorney appointed under the court's inherent authority might be paid – or not. *See* 76 *Opinions of the Attorney General* 341, 343-45 (1991).